In re Marriage of George Harry RICK-ARD, Petitioner/Respondent,

v.

Lucille T. RICKARD,
Respondent/Appellant.

No. 48348.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 16, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 17, 1985.

Application to Transfer Denied
June 25, 1985.

Homer N. Mastorakos, Chesterfield, for respondent/appellant.

Paul W. Kopsky, Chesterfield, for petitioner/respondent.

SMITH, Presiding Judge.

Wife appeals from a judgment in a dissolution of marriage action alleging error in the distribution of certain properties and in the trial court's failure to dispose of her request for maintenance. We affirm.

The parties were married in 1946 and separated in 1972. After their marriage they resided with husband's uncle at the uncle's home on Schoettler Road in Chesterfield. The uncle died in 1961 after having sustained a stroke several years before. By will the uncle devised the Schoettler property to husband. Five heirs of the uncle filed a will contest. In order to settle that contest the husband and wife executed

a promissory note and deed of trust on the Schoettler property and borrowed approximately $6,000.00 to pay the contesting heirs. That note was paid from marital funds. In 1980 following the separation, the husband borrowed $20,000.00 for a business investment utilizing the Schoettler property as security. The wife, at the request of the lending institution, executed the deed of trust but not the note for the transaction. The wife made no contribution to any payments of that note. The order of distribution of the uncle's estate listed husband as sole owner of the Schoettler property. No conveyance was subsequently made and at the time of trial the property was still titled solely in husband's name.

In 1978, wife moved into a house on Flamingo Road. The property was purchased in 1974 in the names of Edward Daughety and wife (each identified as single persons) as joint tenants with right of survivorship. Wife signed the sale contract. Daughety, who was joined as a party, testified the property was placed in wife's name to serve as a "trust" for Daughety's minor daughter. The trial court specifically found that "the man's contention that he intended Respondent to hold the property as trustee for his daughter is not creditable." Both Daughety and wife testified that only Daughety made any payments to acquire the property or expend any money to maintain the property. The trial court made no finding on the credibility of that testimony.

In September 1980, husband filed for dissolution of the marriage. Wife cross-petitioned and requested an award of maintenance. Both parties were employed throughout the marriage and at the time of the dissolution hearing were earning comparable salaries. No children were born of the marriage.

The trial court set aside the Schoettler property as husband's separate property and found it had a value of $207,800.00. It found the wife's interest in the Flamingo property to have "been acquired by Respondent during the marriage" and declared it marital property. All marital interest in that property (having a total value of $41,250.00) was awarded to wife. The trial court further awarded the wife the sum of $5,000.00 "in consideration of the marital funds expended to reduce the debt and pay interest upon the debt incurred in settlement of the will contest action concerning the Schoettler Road property." The remaining marital property was divided $23,000.00 to husband and $22,500.00 to wife, with the bulk of each parties' share consisting of their respective pensions. The court found mutual marital misconduct of comparable quality.

■ Wife first challenges on a variety of grounds the declaration of the Schoettler property as separate property of husband. The major challenge rests on the supposition that borrowing of money by the marital unit to settle the will contest was the "acquisition" of the property under *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984). We do not so characterize that loan. The property devolved to husband through the will of his uncle. The money borrowed was to pay off the will contestants and thereby bring peace. The loan was not used to "acquire" the property, that was done through the will and order of distribution of the probate court. The case is analogous to *Gravenstine v. Gravenstine*, 58 Md.App. 158, 472 A.2d 1001 (1984) which we find persuasive. "Acquired" was defined in that case and in *Hoffmann, supra*, [5, 6] as the "on-going process of making payment for property." The loan here was not utilized to make payment for the property, it was made to settle a lawsuit. The court recognized the marital contribution to the payment of that debt by its award of $5,000 to the wife. Under Sec. 452.330.2 (1) RSMo 1978, the property came to the husband by inheritance and was therefore separate property.

■ Wife further contends that husband orally agreed that the property belonged to both of them. There was evidence to sup-

port the court's contrary conclusion.[1] *In re Marriage of Bruske*, 656 S.W.2d 288 (Mo.App.1983) [9]. Wife also contends that efforts were expended by her in improving the property and that these marital contributions gave her an interest in the enhanced value of the property. The contributions made were such as to make the home more comfortable for living by husband and wife during occupancy of the premises. Much of it occurred while the uncle, who owned the property, was still living. Further, the enhancement in value of the property did not arise from such improvements, but solely because of the increase in value of the land as commercial property. Improvements to the property as a residence did not account for any enhancement in its commercial value, which presumes removal of the residence. We find no error in the award of the Schoettler property to the husband as his separate property.

Wife next challenges the determination that the interest in the Flamingo property was marital. That assertion presents an interesting question of the status of property acquired during the marriage, but after separation, without expenditure of marital funds or effort and the underlying question of where lies the burden of proof to establish "acquisition" by the marital unit and what suffices to meet that burden. We find no need to resolve those questions. Wife's point on appeal challenges the determination but asserts no injury to her from the determination. We can perceive none. The wife received in excess of 50% of the marital property, exclusive of the Flamingo interest. Virtually none of the marital property was income producing unless pension funds can be so delineated. The remaining property consisted predominately of furniture, guns, automobiles, and kitchen utensils. The misconduct of the parties was evenly balanced. The trial court made no determination of the value of the marital interest in the Flamingo property. The wife received all marital interest in that asset. If that property had been held separate property of the wife, we cannot perceive what possible change would be warranted in the disposition of the remaining marital property which would be favorable to the wife. The distribution of the marital property, exclusive of the Flamingo interest, was fair to both parties. How wife is aggrieved by receiving in addition the Flamingo property interest as marital rather than separate property eludes us.

■ Wife's final point is that the court erred in not specifically stating that it was denying maintenance. The court gave no award of maintenance and specifically found each party capable of self-support. We find no error.

Judgment affirmed.

SNYDER and SATZ, JJ., concur.

---

1. We place no credence in the fact that the wife in 1980, long after separation, executed the deed of trust at the request of the lending institution. Her signature was simply to protect the lender and is no evidence of any actual interest in the property.