JAMES M. SMART, JR., Judge.
 

 This is an appeal from a dissolution of marriage, in which Ryan James Sweet appeals the trial court’s award of non-modifiable maintenance to Kathy Louise Sweet. He contends that the maintenance award should have been made modifiable and contests the amount of the award. The judgment is affirmed in part and reversed in part.
 

 Statement of Facts
 

 Ryan Sweet (Husband) and Kathy Sweet (Wife), both of whom served in the 1991 Gulf War, were married in August 1992. They separated in May 2001. No children were born of the marriage. Wife filed her petition for dissolution in August 2001, and Husband filed a counter-petition in November 2001. Wife’s petition included a request for maintenance. A dissolution hearing was held on November 26, 2003. At the commencement of the hearing, the parties stipulated to the court “that [Wife] has a need of maintenance.” During the last few months of the separation, Husband paid $250.00 per month in temporary maintenance by agreement of the parties.
 

 The evidence adduced at trial showed that Wife suffers from numerous health problems, which both parties describe as Gulf War Syndrome. Wife’s neurological deficit disorder is considered progressive in nature. She gets confused easily, has stability problems, and suffers from other complications, including hyper-coagulation, muscular-skeletal disorder, and degeneration. As a result of those health problems, Wife quit her job as a nurse in December 1999 and has not worked since that date. Wife receives disability benefits totaling $1,311.00 per month' — $866.00 per month from Social Security and $445.00 per month from the military.
 
 [1]
 
 In March 2002, Wife received a lump sum payment of $14,136.75 for retroactive benefits from Social Security.
 
 [2]
 
 She also received a lump
 
 *489
 
 sum payment of $10,000.00 from the military in March 2003. Wife testified, however, and the court found, that those amounts had been expended prior to trial for Wife’s necessary living expenses and for her medical and prescription expenses. The court found that “no credible evidence was presented that [Wife] had not used the money as she had testified or that [she] was concealing the funds from disclosure.”
 

 The court found that Wife has monthly expenses of “at least” $2,191.00. That figure includes $270.00 per month for supplemental health insurance from AARP and $620.00 for out-of-pocket expenses for her medications. The supplemental health insurance would be necessary immediately following the dissolution, Wife testified, when she would be dropped from Husband’s employer’s insurance. Although Wife receives some prescription benefits in connection with her military disability, additional insurance is needed to cover all of her prescriptions. She testified that the cost of all her prescriptions without any insurance coverage would be $4,100.00 per month.
 

 Husband’s average net income is $3,382.00 per month, including overtime pay and income from the United States Army Reserves. The court found that, “although the evidence was inconsistent and contradictory,” Husband has monthly living expenses of $984.00. Both Husband and his girlfriend, with whom he was living at the time of trial, testified that Husband shared living expenses equally with her. Although Husband claimed $2,665.83 in expenses on his Second Amended Income and Expense Statement and testified to that amount, he also admitted at trial that many of those amounts were not correct.
 

 The evidence showed that when the parties separated, Wife continued to live in the marital home and Husband moved out. Wife owned the house prior to the marriage. Wife testified that in 1997, she reluctantly added Husband’s name to the title when they refinanced the mortgage. Sometime after the separation, but prior to the dissolution, Husband paid Wife $5,000.00 (apparently with money provided by his girlfriend) for her share of the equity in the house in return for her quit-claiming it over to him. Wife testified that she agreed to this because she was not working at the time and could not pay the mortgage and because she needed the money. Shortly thereafter, Husband transferred the house to his girlfriend. Husband and his girlfriend were living together in the house at the time of trial.
 

 The evidence also showed, and the trial court found, that Husband had concealed from Wife a $50.00 deduction from each of his paychecks, which he used to purchase savings bonds that he put in his girlfriend’s name.
 

 On December 29, 2003, the trial court entered its judgment, setting aside to each party their non-marital property, dividing the marital assets and debts and Husband’s military pension, ordering Husband to pay Wife’s attorney’s fees, and granting Wife a judgment for her share of the savings bonds. The court also awarded Wife $1,000.00 per month in non-modifiable maintenance.
 

 Husband appeals the maintenance award.
 

 Standard of Review
 

 The trial court’s judgment in a dissolution case will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.
 
 In re Marriage of Murphy,
 
 71 S.W.3d 202, 205 (Mo.App.2002)
 
 (citing Murphy v. Carron,
 
 536 S.W.2d 30, 32 (Mo. banc 1976)). We view the evidence in the light most favorable to the decree, disregard evidence to the contrary, and defer to
 
 *490
 
 the trial court even if the evidence could support a different conclusion.
 
 Burnett v. Burnett,
 
 18 S.W.3d 27, 30 (Mo.App.2000). Credibility issues are for the trial court to resolve, and we will assume that all factual issues were resolved in favor of the judgment entered.
 
 In re Kreutzer,
 
 50 S.W.3d 334, 337 (Mo.App.2001).
 

 A trial court has broad discretion in setting the amount and duration of a maintenance award; accordingly, such an award is reviewed only for an abuse of discretion.
 
 Murphy,
 
 71 S.W.3d at 205. An abuse of discretion will be found only where the award is “clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, it cannot be said the trial court abused its discretion.”
 
 Goodin v. Goodin,
 
 5 S.W.3d 213, 216 (Mo.App.1999). The party contesting the maintenance award has the burden of establishing that it amounts to an abuse of discretion.
 
 Burnett,
 
 18 S.W.3d at 29.
 

 Point on Appeal
 

 Husband argues in a single point on appeal that the court abused its discretion in awarding an amount of maintenance based on “anticipated future medical expenses” rather than current needs, and that the court abused its discretion in awarding non-modifiable maintenance as opposed to modifiable maintenance.
 

 The Maintenance Award
 

 Before maintenance can be awarded, the two-part threshold test found in section 452.335.1, RSMo 2000,
 
 [3]
 
 must be satisfied. That test requires the party seeking maintenance to establish: (1) that she lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and (2) that she is unable to support herself by appropriate employment.
 
 Kreutzer,
 
 50 S.W.3d at 337; § 452.335.1.
 

 Once the court determines that maintenance is warranted, the court considers a list of factors set forth in section 452.335.3 in determining the amount and duration of maintenance.
 
 Kreutzer,
 
 50 S.W.3d at 337-38. That statute provides in pertinent part:
 

 The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
 

 (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ... ;
 

 (2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
 

 (3) The comparative earning capacity of each spouse;
 

 (4) The standard of living established during the marriage;
 

 (5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
 

 (6) The duration of the marriage;
 

 (7) The age, and the physical and emotional condition of the spouse seeking maintenance;
 

 (8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
 

 
 *491
 
 (9) The conduct of the parties during the marriage; and
 

 (10) Any other relevant factors.
 

 Section 452.335.2 gives broad discretion to the trial court in applying the factors on which the award is to be based.
 
 Hammer v. Hammer,
 
 139 S.W.3d 239, 241 (Mo.App.2004). The court is to apply the factors so as to balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay.
 
 Id.
 

 Here, after noting in its judgment that Wife had requested maintenance and that the parties had stipulated that she is in need of maintenance,
 
 [4]
 
 the court held:
 

 After consideration of all relevant factors, the Court finds there is necessity to award maintenance to [Wife]. [Wife] lacks sufficient property to meet her reasonable needs, and [Wife] is unable to support herself through appropriate employment. The Court further takes into consideration the financial resources of the parties, and comparative earning capacities; the physical condition of [Wife]; and [Husband’s] ability to meet his own needs in setting the monthly amount of maintenance [Husband] should pay to [Wife].
 

 The court determined, after considering all relevant factors, that Wife was in need of maintenance in that (1) she lacks sufficient property to meet her reasonable needs and (2) she is unable to support herself through appropriate employment. The court ordered Husband to pay Wife $1,000.00 per month in non-modifiable maintenance. The court listed the following specific factors as ones it considered in arriving at that amount:
 

 1. The financial resources of the parties;
 

 2. The comparative earning capacities of the parties;
 

 3. The physical condition of Wife;
 

 4. The Husband’s ability to meet his own needs in setting the maintenance award.
 

 The court did not specifically list the “conduct of the parties during the marriage” (as is permitted under section 452.335.2(9)) as a factor it considered. It can be inferred, though, that the court did consider this factor from the finding that Husband “failed to disclose” to Wife that he purchased savings bonds and put them in his girlfriend’s name while the parties were still married and from the court’s order that Husband pay Wife her share of those savings bonds. Also, we note Husband’s less-than-forthright conduct in the sale of the marital home to Husband’s girlfriend. Marital conduct that places extra burdens on the other spouse and undermines the marriage may be considered, within the parameters of reasonable support, in fixing an amount of maintenance.
 
 McIntosh v. McIntosh,
 
 41 S.W.3d 60, 69 (Mo.App.2001).
 

 The list of factors in section 452.335.2 is “neither all inclusive nor mandatory,” and the trial court is not required to specifically address each factor.
 
 Burnett,
 
 18 S.W.3d at 31. Here, the court stated that it had considered all relevant factors in arriving at the amount of maintenance.
 

 Amount of Maintenance
 

 With regard to the amount of the maintenance award, Husband argues (1) that
 
 *492
 
 the court erred in basing the award on “future anticipated needs” rather than on actual current needs; and (2) that the court abused its discretion in awarding an amount greater than Wife’s demonstrated need.
 

 Husband argues, in his first sub-point, that the trial court abused its discretion in basing the amount of the award on “future anticipated needs.” Specifically, he contends that the $270.00 for health insurance and $620.00 for prescriptions included in Wife’s expense statement were “anticipated” expenses rather than current needs.
 

 We acknowledge that “[a]n award of maintenance cannot be based on a speculative future condition.”
 
 Childers v. Childers,
 
 26 S.W.3d 851, 857 (Mo.App.2000). Wife testified, however, that the $620.00 was the amount she was paying out-of-pocket at the time of trial while still covered under Husband’s employer’s insurance. She also testified that she would no longer be eligible for coverage under that insurance once the dissolution was final and would need to spend $270.00 for additional health insurance from AARP following the dissolution to keep her prescription coverage at the same level. This testimony was uncontroverted at trial. Her medications without insurance coverage cost $4,100.00 per month.
 

 Wife submitted an income and expense statement, in which she claimed expenses of $2,191.00 per month, and testified at trial as to her reasonable monthly expenses. To prove claimed expenses, “statements of income and expenses are routinely admitted and relied upon without further testimony or documentary support for each individual item.”
 
 Id.
 
 at 855. In finding that Wife “has reasonable living expenses of at least $2,191.00 per month,” the court accepted Wife’s evidence with regard to her need for supplemental medical insurance following the dissolution and her prescription costs. Deferring to the trial court’s superior ability to adjudge “the credibility of the witnesses, their sincerity, character and other trial intangibles which may not be apparent in the record,” we find no abuse of discretion.
 
 In re Marriage of Clift,
 
 108 S.W.3d 197, 200 (Mo.App.2003).
 

 We note that under this sub-point, Husband, somewhat offhandedly, discusses two other matters: (1) Wife’s receipt of the two lump sum disability payments and the $5,000.00 from the sale of the house, and (2) the possibility that Wife is eligible for Medicaid. With regard to the lump sum payments, Husband merely lists the payments Wife has received. He does not argue that the trial court should have considered these funds in deciding whether she had sufficient property from which to support herself. Nor does he argue that the court erred in failing to include the funds in the division of marital property. Because Husband fails to develop the necessary arguments here, we consider the issue of the lump sum payments to Wife abandoned.
 
 See In re Marriage of Michel,
 
 142 S.W.3d 912, 930 (Mo.App.2004) (“It is not within the appellate court’s province to speculate about arguments that are not asserted or that are merely asserted but not developed.”). At any rate, the trial court, in accordance with its discretion, accepted Wife’s testimony that she had depleted those funds for necessary living expenses prior to the hearing and no credible evidence to the contrary was presented.
 

 Husband also states that Wife “failed to disclose” that once she is no longer covered by his health insurance, she will be eligible for Medicaid and its medication benefits, and that, as a disabled veteran, her medications are also covered by the Veteran’s Administration. First,
 
 *493
 
 Wife testified that her prescription coverage from the Veterans’ Administration does not cover the bulk of her prescription expenses; specifically, it does not pay anything on one prescription that costs $3,500.00 per month. Second, not only does Husband again fail to develop his argument with regard to Wife’s eligibility for Medicaid, he also fails cite to any testimony or evidence presented at trial that would support this assertion.
 
 [5]
 
 As noted by Wife, “no such testimony or evidence was ever adduced.” Wife specifically testified that she was not eligible for Medicaid, but that she had Medicare, which does not cover prescriptions. Even if Husband is correct that Wife will be eligible for Medicaid, the trial court cannot be convicted of an abuse of discretion for failing to take into account information that was never presented to it.
 

 In his second sub-point, Husband argues that the court abused its discretion in awarding an amount of maintenance greater than Wife’s demonstrated need. He points out that the maintenance award added to Wife’s disability income would give her a monthly income of $2,311.00, or $120.00 over her “demonstrated need” of $2,191.00. Husband asks, “how could an award of maintenance in an amount greater than the demonstrated need not be an abuse of discretion?”
 

 Contrary to Husband’s characterization of the judgment, the trial court actually found that Wife “has reasonable living expenses of
 
 at least
 
 $2,191.00 per month” and that the loss of Husband’s insurance would “significantly” increase Wife’s expenses. (Emphasis added.) In
 
 Childers,
 
 26 S.W.3d at 856, this court stated that
 

 [a] trial court, in calculating and awarding maintenance, may allow a reasonable amount above the itemized expenses of the party seeking maintenance to meet unexpected day-to-day expenses which, given their nature, may be reasonable under the circumstances, yet are incapable of specific itemization.
 

 See Hammer,
 
 139 S.W.3d at 245-46 (court can vary from expense statement where the variation is based on factors in evidence).
 

 “A trial court has broad discretion in determining the amount and duration of a maintenance award[.]”
 
 Childers,
 
 26 S.W.3d at 854. To establish an abuse of discretion, the complaining party must show that the award is “clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration!.]”
 
 Goodin,
 
 5 S.W.3d at 216. Husband does not convince this court that an award of maintenance that exceeds listed expenses by $120.00 (particularly where Wife’s medical and prescription expenses are so unsettled) is arbitrary and unreasonable or that it shocks the sense of justice and indicates a lack of careful consideration.
 

 Unless we find that “the amount is patently unwarranted and wholly beyond the means of the spouse who pays,” we will not disturb a trial court’s award of maintenance.
 
 Burnett,
 
 18 S.W.3d at 29. Here, Husband does not argue that the amount is beyond his means to pay.
 
 [6]
 
 Bal
 
 *494
 
 ancing Wife’s reasonable needs with the ability of Husband to pay, we do not find the amount “patently unwarranted.”
 
 See Hammer,
 
 139 S.W.3d at 241. The party contesting the maintenance award has the burden of establishing that it amounts to an abuse of discretion.
 
 Burnett,
 
 18 S.W.3d at 29. Husband fails to demonstrate under any of his sub-points that the amount of the award in this case is an abuse of discretion.
 

 Non-modifiable Maintenance
 

 Finally, Husband argues that “[t]he trial court abused its discretion by awarding non-modifiable maintenance in a case where a party’s need for maintenance and the other party’s ability to pay that maintenance can change.”
 

 Section 452.335.3 requires the court to state whether a maintenance award is modifiable or non-modifiable. It states, in pertinent part:
 

 The maintenance order
 
 shall
 
 state if it is modifiable or nonmodifiable. The court may order maintenance which includes a termination date. Unless the maintenance order which includes a termination date is nonmodifiable, the court may order the maintenance ... modified based upon a substantial and continuing change of circumstances which occurred prior to the termination date of the original order.
 

 § 452.335.3 (emphasis added). Here, the trial court ordered that the maintenance award be non-modifiable and did not include a termination date.
 

 Husband claims that the maintenance award should be made modifiable because the circumstances of both parties are subject to change.
 
 [7]
 
 Wife argues that if the court adopted Husband’s position, then section 452.335.3 would be meaningless, since any party may have a change in circumstances in the future. While there is some truth in that statement, here, the problem lies not just in the fact that the award is non-modifiable, but in the fact that the judgment also is silent as to the duration of the award. Thus, it evidently is not only non-modifiable, but is also of unlimited duration or non-terminable.
 

 While awards of unlimited duration are favored, the courts prefer that such awards be modifiable.
 
 See Lombardo v. Lombardo,
 
 120 S.W.3d 232, 246 (Mo.App.2003) (citing a judicial preference for
 
 modifiable
 
 decretal awards of maintenance of
 
 unlimited duration).
 
 A maintenance award of unlimited duration that is also justifiably non-modifiable would be “exceedingly rare.”
 
 See In re Marriage of Boston,
 
 104 S.W.3d 825, 835 (Mo.App.2003) (“We are unable to conclude that there are no circumstances under which such an order would be authorized, although we perceive that they would be exceedingly rare.”).
 

 
 *495
 
 Modifiable maintenance awards are preferred because a maintenance award based on section 452.335 is founded primarily on need.
 
 Goodin,
 
 5 S.W.3d at 219. Our Supreme Court has held that because maintenance is founded on need, it may extend only as long as the need exists.
 
 In re Marriage of Lawry,
 
 883 S.W.2d 84, 90 (Mo.App.1994)
 
 (citing Cates v. Cates,
 
 819 S.W.2d 731, 735 (Mo. banc 1991)). “If future events pertinent to the issue of maintenance are uncertain, which is usually the case when a maintenance award is ‘based on need,’ the maintenance award should be modifiable.”
 
 Goodin,
 
 5 S.W.3d at 219.
 
 [8]
 
 Thus, although awards of non-modifiable decretal maintenance are permitted under section 452.335.3, there is a judicial preference for modifiable awards of maintenance of unlimited duration.
 
 Lombardo,
 
 120 S.W.3d at 246.
 

 Just as a maintenance award of limited duration is justified only where there is substantial evidence of an impending change in the financial condition of the parties, so too must a non-modifiable maintenance order “be justified by the facts and circumstances of the particular ease.”
 
 Id.
 

 Here, Wife acknowledges this requirement, citing
 
 Mullins v. Mullins,
 
 91 S.W.3d 667, 673 (Mo.App.2002).
 
 [9]
 
 She argues, though, that the facts and circumstances in this particular case justify a non-modifiable maintenance award because the trial court found that she is unable to maintain any gainful employment in that she is totally disabled and unable to work.
 

 The Southern District of this court dealt with a similar situation in
 
 In re Marriage of Michel,
 
 142 S.W.3d at 930. In that case, the wife suffered from Lupus.
 
 Id.
 
 at 924. She had applied for disability benefits from Social Security, but had not been adjudged disabled and was not yet receiving any disability benefits.
 
 Id.
 
 at 925. The court reversed the trial court’s order of a non-modifiable and non-terminable award of maintenance.
 
 Id.
 
 at 927. The court found that the evidence was not sufficient to support the designation of the maintenance as non-modifiable despite Wife’s medical condition.
 
 Id.
 
 Specifically, the court found that there was no evidence presented that the needs of the wife would not change in the future and that the award of non-modifiable maintenance, therefore, was not justified by the facts and circumstances of the case.
 
 Id.
 
 at 926.
 

 In this case, Wife has been adjudged to be totally disabled by the Social Security Administration and partially disabled by the Veterans’ Administration. In contrast to
 
 Michel,
 
 the evidence here shows that Wife’s condition has been progressively deteriorating, is not expected to improve, and will likely continue to deteriorate in the future. However, if the award is allowed to stand, Husband will be required to pay Wife $1,000.00 per month until death or until Wife’s remarriage, which perhaps (in view of the ages of the parties) could be as long as forty years, without regard to need.
 
 See
 
 Section 452.370.3 RSMo 2000. We can be practically certain that at some point in the future, the sum of $1,000.00 per month will be an inappropriate amount as to some party or both parties.
 
 See Michel,
 
 142 S.W.3d at 926.
 

 
 *496
 
 The circumstances under which a non-modifiable maintenance award could justifiably continue indefinitely would be exceedingly rare.
 
 See Boston,
 
 104 S.W.3d at 835. We do not find such circumstances in this case.
 

 Because of Husband’s pattern in dealing with Wife and discrepancies in his testimony, the court could have believed Husband might be inclined to find frequent reasons to seek modification. We understand the trial court’s concern that making the award modifiable might result in inordinate and unwarranted attempts to change the maintenance award. Such concerns must be balanced against the risk of an unjust result as a result of changes occurring through the passage of time. Also, in the event of any abuse in efforts to modify the maintenance award, trial courts are not helpless but are vested with the authority to take such actions as will tend to deter such conduct.
 

 We affirm the amount of the monthly maintenance award. Because we conclude that the evidence does not warrant making the maintenance award indefinitely non-modifiable, we vacate the judgment and exercise our authority under Rule 84.13 to modify the award to make the award modifiable.
 

 Conclusion
 

 Based on the foregoing, we affirm the amount of the monthly award of maintenance and order pursuant to Rule 84.13 that the award shall be modifiable. The judgment is affirmed in all respects except that the maintenance award shall be modifiable.
 

 BRECKENRIDGE and SPINDEN, JJ., concur.
 

 [1]
 

 . The record shows that the military has found Wife to be 40% disabled from fibro-myalgia and fibromyocitis. The Social Security Administration has determined that she is totally disabled.
 

 [2]
 

 . Husband contends that Wife received a payment of $22,375.00 from Social Security based on her 2002 annual benefit statement. The evidence supports the trial court’s finding that the actual lump sum payment was $14,135.76.
 

 [3]
 

 . All statutory references are to Revised Statutes of Missouri, 2000, unless otherwise noted.
 

 [4]
 

 . Although the parties stipulated that Wife was in need of maintenance, Husband now, in his "Conclusion,” appears to contest the need for maintenance. Having stipulated to Wife's need for maintenance, Husband cannot now contest the trial court's acquiescence in that determination.
 
 See Goerlich v. TPF, Inc.,
 
 85 S.W.3d 724, 732 (Mo.App.2002),
 
 overruled on other grounds by Hampton v. Big Boy Steel Erection,
 
 121 S.W.3d 220, 224 (Mo. banc 2003).
 

 [5]
 

 . Rule 84.04(i) requires that all statements of fact and argument in an appellate brief have specific page references to the legal file or transcript.
 
 See Michel,
 
 142 S.W.3d at 926-27. Husband includes no page references in this portion of his argument, and our review of the transcript reveals no evidence to support this argument.
 

 [6]
 

 . Husband also does not explicitly contest the court’s finding that his monthly expenses are $984.00; he merely recites in his statement of facts that his expense statement showed, and he testified to, expenses of $2,665.83. At any rate, the court’s finding of $984.00 for Husband’s expenses is supported by the record, particularly in light of the extremely contra
 
 *494
 
 dictory and conflicting evidence presented by Husband.
 

 [7]
 

 . Husband discusses various scenarios under which there could be a change in circumstances. He suggests, first, that Wife's condition could deteriorate, at which time "the amount of her disability check would increase, thereby decreasing her need for maintenance from [Husband].” He also states that Wife's “medical condition is subject to change [presumably for the better] as the Veterans’ Administration conducts further studies on the effects of exposure to possible toxins during the first Gulf War.” (According to Husband, "[m]edical conditions are seldom if ever static: they change, for the better or worse.”) Finally, Husband speculates that since he was stationed in the same unit, at the same time, in the same location as Wife, he "may also come down with 'Gulf War Syndrome,’ impacting, in the future, his ability to pay non-modifiable maintenance.” Husband does not contend that he suffers from any symptoms of the syndrome.
 

 [8]
 

 . It should also be noted that because maintenance is founded on need, "lump sum” maintenance is not appropriate under Missouri law, except as a division of property.
 
 Burnett,
 
 18 S.W.3d at 32-33
 
 (citing Cates,
 
 819 S.W.2d at 735).
 

 [9]
 

 .
 
 Mullins
 
 was an appeal from the denial of a motion to set aside a default judgment, and the issue was whether the trial court had exceeded its jurisdiction, pursuant to Rule 74.06(b), in awarding the non-modifiable maintenance. 91 S.W.3d at 673.